IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| VS. | § § | CRIMINAL NO. 17CR0312 |
| VEDAS ENGINEER, BHAVDIP SANGHAVI, Defendants. | § § § § | |

United States Courts
Southern District of Texas
FILED

MAY 25 2017

David J. Bradley, Clerk of Court

## INDICTMENT

The United States Grand Jury charges:

INTRODUCTION

At all times relevant to this Indictment:

1. MoneyGram and Western Union are services that can be used to wire money from one location to another. Through these services, an individual can wire an amount of money up to $20,000 at one store in a day.

2. Customers are able to wire money to another person using these services by going to a location where the service is available and providing their personal identifying information, the amount of money they want to send, and the state where the intended recipient will collect the money. The customer then receives a reference number from the wiring service that the customer can provide to the recipient that allows the recipient to obtain the wired funds.

3. A recipient can retrieve the money by going to a location where MoneyGram and or Western Union are available. The Recipient may be required to verify their identity by providing photo identification and phone number.

1

4. Individuals can also wire money electronically using bank accounts to transfer the money. The individual goes to a bank where they want to deposit the money and the recipient can pick it up at a branch office of that bank in any city of the United States.

**COUNT ONE**
Conspiracy to Commit Wire Fraud
Title 18 U.S.C. § 1349

A. THE CONSPIRACY

5. On or about June 2015, and continuing to on or about May 2017, in the Houston Division of the Southern District of Texas, and elsewhere,

**VEDAS ENGINEER,**
**and**
**BHAVDIP SANGHAVI,**

the defendants herein, did knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to the grand jury, to intentionally and knowingly devise, and attempt to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and in execution of said scheme and artifice, transmitted or cause to be transmitted by means of wire in interstate commerce, writings, signs, signals, pictures and sounds for the purpose of executing said scheme or artifice to defraud in violation of Title 18, United States Code, Section 1343 (Wire Fraud).

B. THE PURPOSE OF THE CONSPIRACY

6. It was a purpose of the conspiracy that the defendants and their co-conspirators operated a scheme to fraudulently obtain payments of fictional taxes owed to the United States Department of Treasury through the Internal Revenue Service (IRS). The defendants known and

unknown posed as IRS Agents and unlawfully pressured victims' to send fictional delinquent taxes owed to persons in the Houston area via wire or mail. The Defendants then utilized runners to acquire money sent by wire or transmitted electronically through bank accounts.

C.  THE MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among things, the following:

7.  It was part of the conspiracy that victim taxpayers from across the United States would receive telephone calls from persons falsely representing themselves to be an employee of the IRS. The victims would be told they owed money to the IRS from an outstanding debt. The caller would use various methods of intimidation and threats to convince the victim to pay money and resolve the tax debt immediately.

8.  It was part of the conspiracy that the victim would be directed to a MoneyGram or Western Union to wire the funds immediately. The victim also could be directed to deposit the money into a particular bank account so the funds could be transferred electronically. The victim would comply with instructions given by the conspirator by wiring funds to recipients identified by the caller. The victim would also be told to wire the moneys in several installments, to several recipients, breaking up the amounts so as not to be detected as easily.

9.  It was part of the conspiracy that ENGINEER and SANGHAVI (the Defendants) would take the identified recipient of the money, a "runner," to the location where the funds were being sent. The Defendants are not employees of the IRS. The Defendants would have a copy of the license and identifiers of the runner to give the victim. The runner would then pick up the money from the wire transfer and provide it to the Defendants. Runners used in this case include

3

Deborah Gladney Peters, Kenneth Gladney, Julio Hernandez, Joliza Lopez, Crystal Olvera, Brandon Gonzalez, Brandon Mauricio, Edward Ysaguirre, Xevier Blackwell, Hope Ann Garza, Chelsea Gomes, Claudia Espino, Leland King, Sarah Godfrey, Manny Fulgencio, Chris Dickens, and Ryan Portocarrero.

10. It was part of the conspiracy that the Runner would give the Defendants the entirety of the money received in the wire transfer. The Runner would then be given a small payment per transaction or per day. The Runners were also paid per person they referred to work for the Defendants.

11. It was part of the conspiracy that the Defendants encouraged some of the Runners to open bank accounts where money from victims could be wired into. At the time the bank account was opened, the Defendants would be given the debit card for the account by the runner. The runner would withdraw the proceeds of the account to give to the Defendants. Additionally, the Defendants would use the debit cards to use proceeds from fraudulent transfers for personal reason.

12. It was further part of the conspiracy that the Defendants would transition Runners frequently; only using Runners for a short period to collect wire transfers, knowing that they could be identified as recipient of fraudulent wires at some point, bringing attention to the fraud.

C. <u>ACTS IN FURTHERANCE OF THE CONSPIRACY</u>

13. In furtherance of the conspiracy, and to achieve the object and purpose thereof, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following acts, among others:

a) In June 2015, Deborah Gladney Peters was taken by the Defendants to several locations in Houston, Texas, to pick up the proceeds from wire transfers, including Western Union transfers of $3,794 from victim L.C. The Defendants took the entire amount of the transfers picked up by Peters. Peters was paid $250 for a day of picking up wire transfers.

b) In June 2015, Kenneth Gladney was taken by the Defendants to several locations in Houston, Texas, to pick up the proceeds from wire transfers, including a transfers of $3,850.00 via Western Union from victim B.S.

c) In November 2015, Joliza Lopez was taken by the Defendants to several locations in Houston, Texas, to pick up the proceeds from wire transfers, including a Western Union transfer of $4,100.00 from victim M.L. Lopez picked up the wire transfer of $4,100 and gave the entire amount to the Defendants. The Defendants paid Lopez $125 for picking up the wire transfers.

d) In December 2015, Leland King was taken by the Defendants to several locations in Houston, Texas, to pick up the proceeds from wire transfers, including a MoneyGram transfer of $1,389.22 from victim L.B. King was paid $100 by the Defendant's every time King gave them amounts sent to him via wire or bank account.

e) In January and April 2016, Edward Ysaguirre was taken by the Defendants to several locations in Houston, Texas, to pick up the proceeds from wire transfers, including a Western Union transfer of $4,100.00.

f) In January 2016, Brandon Mauricio was taken by the Defendants to several locations in Houston, Texas, to pick up the proceeds from wire transfers, including

a Western Union transfer of $1,100.00 from victim B.P. Mauricio picked up transfers over a two-day period and gave the entirety to the Defendants. The Defendants paid Mauricio approximately $10 for $1,000 in wires collected.

g) In February 2016, Julio Hernandez was taken by the Defendants to several locations in Houston, Texas, to pick up the proceeds from wire transfers, including a MoneyGram transfer of $1,495 from victim P.A. Hernandez gave the entire amount from the transfer to the Defendants. Hernandez was paid $150 for a day of picking up wire transfers.

h) In August 2016, Chelsea Gomes was taken by the Defendants to open a new Wells Fargo Checking Account. Approximately $8,900 was transferred from victim A.L. into that account. Gomes withdrew the entire amount and gave it to the Defendants. Gomes was paid $150-$300 every time she picked up money for the Defendants.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS TWO - SEVEN**
Wire Fraud
Title 18 U.S.C. §§ 1343 and 2

A.     THE SCHEME AND ARTIFICE TO DEFRAUD

14. On or about, the dates specified below, in the Houston Division of the Southern District of Texas, and elsewhere,

**VEDAS ENGINEER,**
**and**
**BHAVDIP SANGHAVI,**

defendants herein, aided and abetted one another, to knowingly and with intent to devise a scheme and artifice to defraud, and attempt to defraud, money and property by means by false and fraudulent pretenses, representations and promises, all as more fully set forth below.

B.  THE MANNER AND MEANS OF THE SCHEME TO DEFRAUD

15. Among the manner and means by which the Defendants sought to accomplish and did accomplish the purpose of the scheme to defraud were the acts set forth in paragraphs 7-13 in Count One in the Indictment, hereby re-alleged and incorporated by the grand jury as if fully set forth in this count in the Indictment.

C.  EXECUTION OF THE SCHEME TO DEFRAUD

16. On or about the dates specified as to each Count below, in the Houston Division of the Southern District of Texas, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and indenting do so, the defendants, intentionally and knowingly, aided and abetted one another, caused and attempted to cause to be transmitted by means of wire in interstate commerce, writings, signs, signals, pictures and sounds for the purpose of executing said scheme or artifice, either from or to Houston, Texas metropolitan area, in the Southern District of Texas, the following which contained fraudulently obtained fake federal income taxes due:

| COUNTS | DATE MONEY WIRED TO HOUSTON AREA | NAME OF VICTIM | AMOUNT OF WIRE |
|---|---|---|---|
| TWO | June 9-10, 2015 | L.C. | $3,794 |
| THREE | June 10-11, 2015 | B.S. | $4,650 |
| FOUR | November 13, 2015 | M.L. | $4,100 |
| FIVE | December 9, 2015 | L.B. | $1,389 |

| SIX | February 9, 2016 | P.A. | $1,495 |
| SEVEN | August 24, 2016 | A.L. | $8,900 |

All in violation of Title 18, United States Code Sections 1343 and 2.

## COUNT EIGHT
Mail Fraud
Title 18 U.S.C. §§ 1341

On or about May 1, 2017, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

**VEDAS ENGINEER,**

for the purpose of executing the aforesaid scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and indenting do so, the defendant, intentionally and knowingly, caused and attempted to cause to be delivered, through the United States mail or by any private or commercial interstate carried, according to the directions thereon, either from or to Houston, Texas metropolitan area, in the Southern District of Texas, which contained a fraudulently obtained $25,000 cashier's check from A.E.

In violation of Title 18, United States Code, Sections 1341.

## NOTICE OF CRIMINAL FORFEITURE
28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C)

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the Defendants

**VEDAS ENGINEER,
BHAVDIP SANGHAVI,**

that in the event of conviction for Conspiracy as charged in Count One of the Indictment, and/or Wire Fraud as charged in Counts Two through Seven, and Mail Fraud as charged in Count Eight the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses. The property subject to forfeiture includes, but is not limited to, the following property: approximately $ 1,715,686.96 in United States dollars.

Money Judgment

Defendants are notified that upon conviction, a monetary judgment may be imposed equal to the total value of the property subject to forfeiture, for which the Defendants may be jointly and severally liable. That amount is estimated to be, but is not limited to, approximately $1,715,686.96 in United States dollars.

Substitute Assets

Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of defendants,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the total value of such property pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 28, United States Code, Section 2461(c).

A TRUE BILL

ORIGINAL SIGNATURE ON FILE

_____
FOREPERSON OF THE GRAND JURY

ABE MARTINEZ
ACTING UNITED STATES ATTORNEY

By: _____
Celia Moyer
Assistant United States Attorney
(713) 567-9000